[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated July 16, 2002, the Plaintiff wife instituted this action claiming a dissolution of marriage and an equitable division of the parties' property.
Testimony was taken and exhibits were entered in this case. The court has considered all of the evidence presented and makes the following findings.
Findings
The court has jurisdiction of this matter and all statutory stays have expired. The allegations in the complaint have been proven and are true. The marriage has broken down irretrievably with no hope of reconciliation.
Specifically, the parties were married on December 31, 2000 in Middletown, Connecticut. They separated after a period of eighteen months. No children have been born to the wife who are the parties at issue. No state or municipal agency has or is contributing to the support of the parties. The plaintiff is 30 years of age and has a Bachelor of Arts degree in History. She is in good health. Her employment history includes working as a bartender, a substitute teacher, a property manager, a sales manager in the hotel business, and a general manager in the restaurant business. During these periods of unemployment, she made some contacts in the restaurant and food business. Ultimately, she decided to open a catering business.
The plaintiff met the defendant in April 2000 when she was working as a bartender at the Doubledown Grill. At the time the parties began dating, the defendant was the general manager at Dakota restaurant, had worked there for 3.5 years, earning approximately $65,000 per year. He would have vested for pension purposes after a total of five years with Dakota. At Dakota, he worked six days per week from 1:00 P.M. until 10:00 CT Page 3245 or 11:00 P.M.
In establishing the business, the plaintiff found an empty cafeteria on Woodland Street in Hartford. She negotiated a lease to pay $400 per month in rent. In exchange, she agreed to provide breakfast and lunch to customers in the cafeteria and to use the business as her base for catering. She called the business "Crunch Time Cafe" and "Kelleanne Catering." She spent the month of June cleaning the building. She invested $5,000 to start the business but this loan was forgiven as a wedding present to her and the defendant at a later date. She and the defendant and her family and friends prepared the business for opening day which occurred in mid-July 2000. At that point, she and the defendant would arrive at the business at 4:00 or 5:00 A.M. to open the business and prepare for customers. The defendant would work there until he left for his job at Dakota's at 1:00 P.M. He ran the cash register, stocked supplies and brewed coffee among other duties. The plaintiff prepared and ordered food and worked on making contacts and scheduling events for the catering business.
By October 2000, the parties were living together, agreed to marry and did so in December 2000. At that point, the cafeteria was open five days per week, 8:00 A.M. to 2:00 P.M. and was grossing approximately $400 per week. The catering business was doing five to seven events per week and grossing $50 to $400 per event. At that time, a GMAC van was financed in the defendant's name for the benefit of operating the catering business. The parties traded in their vehicles and leased an Audi in the plaintiff's name for their personal use. The long-term plan of the parties was to open a restaurant.
On January 15, 2001, by agreement of the parties, the defendant quit his job at Dakota's to work full time in the business. In April 2001, the name of the business was changed to "Muddy Water's Entertainment." The plaintiff was left as "d/b/a" on the business because with a female owner, the business would receive favorable minority status. The business included "Crunchtime Cafe," "Pintore Catering," and event management. By the end of 2001, "Pintore Catering" was hosting seven to ten events per week and some evening parties. In 2001, the business grossed sales of $200,000.
Initially, the plaintiff handled the finances but, ultimately, the defendant took over the finances completely. This allowed the plaintiff to continue promoting the catering business. By 2001, all of the parties' financial transactions were handled by one joint account. All of their checks and ATM withdrawals for personal use came directly from the business. By 2001, the business had five employees, yet no estimated CT Page 3246 quarterly tax payments were made in that year with a tax delinquency owed by the end of the year in the amount of $10,000. At that time, the parties began working with an accountant, Mr. Quinn, who was also a witness at trial. By 2002, the employees were receiving the appropriate 1099 tax forms. In April 2002, "Laura" became a managing partner and office manager. She was paid $12-13 per hour plus 2% of the gross sales plus a company vehicle, cell phone, and health insurance. Ryan Jones was hired as a chef on June 1, 2002 and he received $45-48,000 per year plus 2% of the gross sales, company vehicle, cell phone and health insurance. In 2002, the business had gross sales of $630,000. The taxes owed for tax year 2002 were $26,511.
At some point in 2001, the parties began to argue and this discord increased in 2002. At some time in June 2002, the defendant began to suspect that the plaintiff and the chef, Mr. Jones, were having an affair. An incident occurred on June 26, 2002 resulting in the defendant's arrest for domestic violence. Although the plaintiff decided that the marriage was over, she continued to work in the business and on catering events with the defendant. By agreement, the defendant removed $5,000 from the business account to repay a loan to his father. On June 29, 2002, the parties attended an event together where the defendant accused the plaintiff of having an affair with Mr. Jones who was also present. The plaintiff admitted to having an affair to the defendant. He insisted that Mr. Jones be fired and he was but he was subsequently rehired by the plaintiff in August 2002.
The first weekend in July, the plaintiff spent time with Mr. Jones at the Norwich Inn and Spa. The plaintiff subsequently filed for divorce on July 16, 2002. The defendant gave his keys to the business to the plaintiff and the parties agreed that the plaintiff would draw $600 per month from the business and the defendant would draw $400 per month. The plaintiff then reneged on the agreement. She withdrew her name from the automobile policy and the business stopped paying those premiums and any other expenses of the defendant. She established a new business account solely in her name. Prior to this change, the defendant had taken some small sums of money from the business but the exact amount of those withdrawals is not clear. The cafeteria closed in mid-July due to lack of summer business and reopened in August 2002.
In October 2002, by agreement, the plaintiff was ordered to pay $400 per week to the defendant. After ten weeks, that order was terminated by the court (Brennan, J.).
In July 2002, the plaintiff and Mr. Jones began to cohabitate. Since that time, they have vacationed in New Orleans and in Florida on two CT Page 3247 separate occasions. Between July and December 2002, the business liabilities amounted to $81,000. The business has continued to provide income to the plaintiff and a significant salary to Mr. Jones. Since January 2003, the plaintiff has taken a draw of $1,000 per week from the business. The plaintiff concedes that she has a very favorable lease, that Mr. Jones is a well-paid chef and that a company vehicle was purchased for him as well.
Valuation of the business
Mr. Quinn, the plaintiff's current accountant, testified that the business is worth nothing if one takes into account the current liabilities totaling $81,000. Mr. Larson, a business broker with extensive experience in buying and selling businesses and with no prior connection to either party, testified that the business is valued at $107,000 with an indicated value of $127,000 and that valuations are done without respect to liabilities. The court finds Mr. Larson's testimony independently credible and persuasive. The business continues to generate significant income to the plaintiff and in little more than one year, has tripled in its gross sales.
The court finds the plaintiff and defendant to be hardworking, industrious young people who have managed to build a reasonably solid business from the ground up. Its success can be attributed to both parties and they have established themselves as equal partners in the business. There is sufficient evidence in the record for the court to find that the parties are co-owners of the business and that it is valued at $107,000. That finding is based upon the court's review and consideration of the testimony and all exhibits entered at trial. The court is confident that the business will continue to thrive and to generate significant income.
Orders
The court has considered all of the testimony and exhibits entered at trial as well as the factors set forth in Connecticut General Statutes Secs. 46b-81, 46b-82, and 46b-62 and other pertinent statutes, the parties' earnings, and earning capacity differentials, and the consequences of the financial awards set forth below. The court has also considered the parties' educational backgrounds, and past employment experience and the fact that the plaintiff has a continual stream of income coming from the business built by both of the parties.
It is ordered that a decree dissolving the marriage on the grounds of irretrievable breakdown shall enter. Further, the court makes the CT Page 3248 following orders:
1. Alimony
Given the property distribution, there shall be no alimony awarded to either party.
2. Health insurance
The parties shall each be responsible for maintaining their own health insurance.
3. Medical insurance
The parties shall be responsible for their own medical insurance coverage.
4. Marital assets
The plaintiff is awarded the business "Muddy Water's Entertainment" or "Muddy Water's Inc." and the related businesses, Crunchtime Cafe, and Pintore Catering. She shall pay to the defendant $15,500.00 within sixty days. This sum is in lieu of any alimony award and for the defendant's share of the business. It also takes into account that the plaintiff will be responsible for the personal past due taxes owed by both parties and any current liabilities owed by the business.
5. Personal property
The parties shall divide any remaining personal property to their mutual satisfaction. The plaintiff shall retain the GMAC van and the Sequioa and shall be responsible for any and all payments or lease liabilities associated with those vehicles. The defendant shall retain the Audi and be responsible for any and all debts or lease liabilities associated with that vehicle. The parties shall take whatever steps are necessary to transfer the title of each automobile to its respective owner.
6. Division of debts
The parties shall each be responsible for the debts listed on their respective financial affidavits. The plaintiff shall be responsible for any past income taxes owed to the IRS by the parties for tax years 2001 and 2002. She shall also be responsible for any debts and liabilities owed by the business. CT Page 3249
7. Attorneys fees
Each party shall be responsible for their respective attorneys fees.
 BY THE COURT, PRESTLEY, J.
CT Page 3250